The next case for argument is 16-2004, Samsung Electronics v. Straight Path. Mr. Jacob, whenever you're ready. Morning, Your Honors. Shriek Jacob, a techer at Van Ness and Peter's, on behalf of Appellants. The Patent Trial and Appeal Board adopted a construction that even Straight Path does not defend to this Court. In the proceedings below, Straight Path invited error by arguing that the claims require... You only referenced substantial evidence twice in the blue brief, and those are very general references. Do you contend that any of the PTAB's factual findings are not supported by substantial evidence? Your Honor, we dispute the PTAB's finding that the is-connected-to-the-network limitation was satisfied. But we believe that in reaching that finding, the Board made an error of law. Because Straight Path below invited and asked the Board to apply construction that required 100% accuracy, the Board engaged in the obviousness analysis backwards. The problem, it seems to me, that you have, so I'd like you to respond, is our case, our opinion in SIPNet. And indeed, when I read your brief and you say repeatedly the error is requiring 100% accuracy, that sounded familiar. And the reason it sounds familiar is that the dissent in SIPNet suggested that that exactly was what the majority was requiring. If the dissent was correct in its articulation of what the majority said, then what does that do to your argument? Your Honor, it is correct that the dissent said that. However, that appears nowhere in the majority of opinion. But the majority didn't dispute it. Well, Your Honor, I respectfully disagree. There are a number of points where the majority specifically talks about the technology in the patent, the preferred embodiment of the claim limitation at issue. And it does not say that it is perfectly accurate. For example, in SIPNet, at page 1362, the majority says, the specification immediately continues with a description of how a connection server might work so as to shrink, if not completely eliminate any gap between reported status and true status. In other words, the preferred embodiment of the claim does not record online status with perfect accuracy. Indeed, in the preferred embodiment itself, there is a gap. Our point is that the prior art is just as accurate as the preferred embodiment of claim one. What SIPNet found, the Federal Circuit previously found, and indeed what Straight Path admitted in its papers below, is that an embodiment of prior art, or any technology, embodies claim one if it does two things. This particular limitation is connected to the network. If it tracks when a server goes online, and if it tracks when a server goes offline. In light of that, I'd like to read what the Board's findings actually were. But wait, the opinion actually does talk about relative currency, but then it says that instead of saying that it supports a different view of its construction, it says that the specification thus distinguishes rather than equates being online and being, or having been, registered. And we don't dispute that at all, Your Honor. That's a very important point, and I just want to draw it out here. What was at issue in SIPNet was a matter of timing. The prior proposed construction was that if a process registers, it is online forever, regardless of whether it later goes offline. We do not here contend that that is appropriate. No, I don't, well, I must respectfully disagree. I don't read the majority opinion as saying that. It seems to me like we're talking past each other, which is what the briefs in this case do. You are continuing to press what it seems to me the argument was in SIPNet, whether what is done at the time of the query. And what they said, I mean, they talked about registration, even if you check registration in some periodic fashion after the initial registration, that's not the same thing as making that query at the time when the computer is connected at that moment. And that seems to me what SIPNet was construing. We may, at the end of the day, agree or disagree with that. That's the precedent that binds us. So, I mean, registration is something different, even if registration is checked, even if you can deregister at a different time. It seems to me the majority in SIPNet said that loud and clear. So, Your Honor, there are parts where we agree, and there are parts where we disagree. And I think that the nuance here is extremely important. I agree with the court, and I agree with SIPNet's prior decision that registration alone is not sufficient to determine online status. And what SIPNet, the prior majority opinion was concerned about was an issue of timing. Does the technology continue to track online status after the first registration? And here, the board found that is exactly what it does. And I'd just like to read the board's findings into the record, because they're very important here, and they're not disputed. Indeed, Straight Path argues that the board's findings are supported by substantial evidence. I'm now quoting from Appendix 101. This is the prior art server. The server keeps the mapping of names to IP addresses relatively current by tracking which users are still connected to the network. But the board didn't stop there. It didn't just find the conclusion that the prior art server is tracking online status. It actually found how it does so. And it found that it did so using two mechanisms. Wait, wait, wait. You skipped the part that says petitioner contends. Your Honor, that's because the board... You acted like that was a finding. It was a finding, Your Honor. At Appendix 98 and at the bottom of Appendix 101, the board explicitly states that it is adopting petitioner's contentions as its own. Well, let me ask you this then, since we're in that area. Page 3 of the Blueberry, you say, PTAB expressly found that the WINS and NetBIOS prior art keeps the mapping of names to IP addresses relatively current by tracking which users are still connected to the network. And you cite me to 94 and 96 in the appendix. I couldn't find that at all on 94. I appreciate for that miscite, Your Honor. I did find it on 96. In 96, it begins, petitioner further argues. Are you telling me that first tell me why you omitted those words, petitioner further argues, and are you contending that the PTAB adopted that argument on its own? Your Honor, we are not trying to mislead the court. I just want to be absolutely clear. If you turn to page 98 of the appendix. You didn't cite me to 98. Don't say this. I apologize for any citation, Your Honor. If you look at the paragraph there, the second sentence from the end, we determine that the record supports petitioner's contentions and adopt petitioner's contentions discussed below as our own. Now the contention that we cite is on page 101. And I'd like to point you to the bottom of 101 too. I just want to make sure the record is absolutely clear. But on 98, the court is referring to claim 3. And on 101, the court is talking about claims 1, 2, and 5. The court at this point is talking about claims 1, 2, and 5 of the 469 patent. But obviously the prior art doesn't operate differently depending on what claim is at issue. And I just want to point the court to appendix 101. That's where the petitioner's contention is laid out. Petitioner contends that. And at the bottom of appendix 101, it says, we are persuaded by petitioner's contentions with respect to claim 1 and we adopt them as our own. In other words, the board adopted petitioner's view of the prior art. I'd also like to point you to appendix 95. These are independent findings of the board. These were not initially phrased as petitioner's contentions. In this section, the board specifically describes how the prior art tracks online status after the time of registration. Not by relying on registration alone, but by technologies that continue to track online status after registration. It says, WINS discloses that once a computer is registered with a WINS server, which is a NetBIOS name server, as active and online. That's registration, Your Honors, right there. The WINS server maintains a database of names and addresses as active and online by one, releasing the names once a computer is shut down properly, and two, requiring a renewal time period. Right, but no one disagrees with that. In fact, as you failed to mention, this says, in this place, it says, in view of our construction of this claim limitation, we agree with the patent owner as to what's going on. So, in other words, what they're saying here is that, yes, it could be right at some points in time that it's online, but this registration system, as the prior majority said, in our prior opinion, is not enough because the only thing that's claimed is determining whether they're active and online at that moment. It's our position, Your Honor, that the prior majority opinion did not require 100% perfect accuracy. We do not believe that that was a part of the claim construction, and indeed, Straight Path didn't even defend that position in its opposing brief. Can I just ask you, before your time runs out, this is as an aside. The one shout-out you did get in SIP-Net from the majority was the suggestion that we haven't, we're not saying anything with regard to written description or enablement, right? Yes, Your Honor. Has that ever been at issue? I mean, there's so many IPRs going on, and obviously the IPRs aren't covering that. Is there litigation pending in the district court? Has anyone ever raised or adjudicated the question of enablement and written description under this claim construction? There is litigation pending in the district court, and that issue has not yet been adjudicated, Your Honor. I'll reserve the rest of my time. Thank you. Good morning, and may it please the Court. To echo what was said in the first argument today, here we are again. Chief Judge, you actually put it exactly right. SIP-Net does speak loudly and clearly. Can we start with where your friend on the other side left off, and that is with the district court litigation? Is it correct that it says in footnote three of the blue brief, or one of the blue briefs, that in fact, in district court, you took a different position with respect to claim construction? No, Your Honor. Our position has always been consistently that is connected means it's connected at the time the query is transmitted. And that there is no infringement if it's not accurate all the time? What we have said consistently, including in all these proceedings, and in the SIP-Net appeal and the proceedings that led to that appeal, is that the system must be designed to be accurate and reliable. Yes, so I think the difference here is that only appellant's counsel in the artful advocacy has turned that into this notion of perfection. That doesn't appear anywhere in any of the proceedings below. I think it should be somewhat commonsensical that when you design a system to make a determination, like the SIP-Net panel said, it has to be accurate and reliable. That's the whole purpose for the system. So it's designed to shrink or eliminate that gap between actual and recorded. So you think that Judge Dyke was wrong in his dissent when he said that the majority opinion required absolute accuracy? I think this is what I think of Judge Dyke. My answer to that is that Judge Dyke didn't get it right for this reason. I think we and the SIP-Net panel got it right that the system has to be designed to always return an accurate and reliable answer to the query. The determination has to be reliable or else why design the system? What Judge Dyke's dissent posited was, well, if it requires this 100 percent, does it require this 100 percent? Actually, is it enough that I say, I spoke to John five minutes ago, so he must be at home? In other words, does an inference alone satisfy the reliability of the system? No, it doesn't. If you had added to his hypothetical what the patent actually calls for and the claim requires that, hey, I just spoke to John five minutes ago and I told him if for any reason he's going to go offline or turn his phone off, just let me know. That would be different. Putting that analogy aside then, how does it determine if someone is online if it's not by checking registrations? You can see that all of the embodiments refer to checking registration databases. No, Your Honor. That's why I think actually because there was that discord between Judge Dyke and the other judges on the SIPnet panel, the majority of the opinion actually discusses the specification to show and demonstrate that it's not in any way in discord with the opinion. They refer you to column six and say, listen, what's happening is we have to know the computer has come online and is now an active party ready for communication. That's column five. That's registration. But then column six it goes on to, but our system also has to track whether you are continuing to stay online. There has to be some mechanism in the system to flag you as offline. Okay, and what is the mechanism? Excuse me? What's the mechanism? There's many mechanisms, Your Honor. One of ordinary skill in the art, as we said to the panel below and mentioned in the proceedings in SIPnet, there are many ways that you could accomplish that pervasive connection, constant pain. One of skill in the art would know that. The issue in SIPnet and the issue that controls here is that the claim plainly requires that it track that online status so that it can make the determination at the time that the query is transmitted to the server. Is running the same thing as being online? Currently running would be the same as being online status, being online, yes, Your Honor. So three things caught my eye, Your Honor, that I just, and I think the colloquy between you and opposing counsel did a very good job on these things, but three things quickly. The appellants now say that they agree that registration alone is enough. That's clearly not true. That has never been their position. The simple reality is they must continue to argue that registration alone is enough because without it they lose. There's no better example of that than page 21 of their reply brief at footnote 3 where they raise what they believe is the proper hypothetical to understand why the prior art invalidates the claims. They say that there's a person that moves to a city, John, a city registry. He goes and registers his name and the address at which he lives and that enters into the city's database. It's odd enough that they choose as a hypothetical a registry, but they then say that if someone comes in and asks, is John living in the city? They will go to the database of their records and provide the information from the database. What they don't tell you is that will just provide you the last known address of John. That is not the query that these claims require. Let me ask you, and I'm going to use some of your prior statements against you here in this question so you can tell me why I shouldn't or why it's wrong. So the board said that WINS and NetFiles don't disclose the is connected to. But they never actually addressed whether or not what WINS and NetFiles do disclose might otherwise lead a person of ordinary skill in the art to the point of understanding how to do the pinging or all those things that you said were commonly known in the art and that a person of skill in the art would understand. So why isn't that a relevant question? Because as this court in Sipnet said, the written description enabled issue was not part of the inter-parties review process. It was not part of the proceedings. I'm not talking about written description or enablement. I'm saying you said that there wouldn't be a problem on written description or enablement because one of ordinary skill in the art would understand exactly how to do it. So I'm saying on a pure obviousness analysis, if one of ordinary skill in the art would understand exactly how to get from tracking whether they've registered and are online in the first instance and continually pinging to make sure they're still online, if that's the case, why wouldn't that be obvious? Well, I don't think that's obvious, Your Honor. I think the thing that's actually before us though is whether or not this system, the board in considering the prior art systems, whether or not they actually attempt to make the determination required by the claims. And they don't. It's not a question that they attempt it. They just don't do it with a level of accuracy of some kind, whether they only do it generally or some of the times. They don't do it at all. You don't ever get to the notion of accuracy. The prior art systems are name servers, Your Honor, as they clearly explain. It's literally that nodes in that system are identified by IP addresses, but people would rather have the ease of referring to them as a name. So the name server simply registers a name you want for that node and maps its IP address and registration to it. If you query that name server and say what is the IP address with that name, if it has it in the database, it will provide it to you. It never cares or makes any determination of whether that other node is online. It doesn't care. Can I just interrupt you just to follow up on Judge O'Malley? Let's assume hypothetically that there were 15 pieces of prior art out there that met this limitation. Now we can understand since the other side was pressing and the board agreed with them a claim construction that didn't require that, they wouldn't have introduced it. Now I understand the way things worked is after SIPNet came out, the board allowed additional briefing. But at that time, your friend would have been precluded from adding any additional art as a petitioner, bringing that in to show that what Judge O'Malley is hypothetically arguing, that if you took the pieces of prior art that were before the board and you just added something else that was also in the prior art,  You understand what I'm saying? If that's the hypothetical, why isn't there a problem with how this case went down? As I understand your question, Your Honor, I've never seen that art. I've never seen anything. The SIPNet decision came down. These IPR proceedings presented the exact same art in the exact same way. I've never seen that other piece of the puzzle that's posited by the question. Well, if one skilled in the art would have known how to do it, then that's something that would have been included in an obviousness analysis, would it not? Well, Your Honor, it would have to be a piece of prior art that would have been able to establish that the two things taken in combination with the proper motivation. My answer to the question this morning was merely to say that with respect to what's taught in the specification relative to what's required in the claim, it notes that time stamping in column five, which was what Judge Dyke was referring to, shows that the party is active and online, but it's not meant to show the other necessary element, which is we track online status with this claim, and you're required to show that you're able to determine online status at the time of the query. The only thing we've ever said other than that is that it's irrelevant to that analysis what exactly one of skilled in the art would do to actually design it. Column six, as the SIPnet panel acknowledged, says that the specification teaches things like offline messaging, flagging, and things like that, but that was something that was left for one of ordinary skilled in the art to design. The issue is that the claim plainly on its face is connected and requires the system to determine the online status of the process at the time that query is sent to the server. Let me take you back to the question I asked you about currently running and being online. The reason I asked that was because page 13 of your red brief, you have a citation to 2336 in the appendix, which deals with mapping and distinguishes, but it doesn't give me that definition that you gave me. You just said they're the same thing. Where is the definition that tells me currently running and being online are not the same thing? Your Honor, I don't know if I have a site that tells you that. I think that's just it's never been disputed by the parties. The reference at 2336, not only that we cite it, that's the express acknowledgment in the prior references that the board relied upon properly, but it completes something that's not quoted there. They expressly acknowledge that. Mapping in the database does not ensure that the related device is currently running, only that it's there. That's right. It's not just the board quoted that it doesn't ensure part, but what wasn't quoted by the board is equally as important right below that. The system is only that a computer claims a particular IP address, and that's currently valid IP mapping. In other words, I've registered a name. I've registered an IP address. They're mapped together. Yeah, but I think, Your Honor, I don't have something at the rate that says currently running is synonymous with online status for this purpose, but no one has ever disputed that. I don't think you really could. If I could just return briefly to the three points I want to make sure are clear. Opposing counsel said that the board got it wrong because they said it's some notion of a question of timing. I just want to be clear. I've just run through with you. It was a question of the system not doing it at all. And so it was very clear that in this example, the board clearly and unambiguously followed the construction and the guidance provided by the SIP network. And three things are dispositive of why we know that. One, the SIP net opinion gives us the construction, an explanation of what the query must do to accomplish something under that construction. It must make the determination of online status at the time of the query. And then it goes on to say, and this is very important, it goes on to say it would not be a reasonable construction to find that the limitation is satisfied by something that only asks for registration information regardless of its accuracy. You have to understand the context of that. When they had the SIP net appeal, when this court had the SIP net appeal, it knew the exact same pieces of art were before it, before the board below, presented in the exact same way. And wasn't SIP net, wasn't their analysis there an anticipation analysis and not an obviousness analysis? Or am I wrong about that? Your Honor, as I recall, it was both. Both were in the case, but I think the claims we're talking about were anticipation. I may be wrong. You don't care. The takeaway point is literally this simple. What they said is that the proper construction of the claim is this, is connected, means it's connected at the time of the query. And for whatever might satisfy that going forward, it cannot be the only thing that these prior systems do. In other words, the systems acknowledge them expressly, that all they do is map an IP address to a name, and that's the only information they'll provide. And the SIP net decision says, under our construction, for whatever might in the future meet or not meet that limitation, this type of thing cannot do that. And that, Your Honor, I believe is dispositive of the issue you have here before you. And that's why I think, knowing that they've tried to construct this argument, that somehow the board engrafted a limitation at our invitation. It's simply wrong, Your Honor. As a matter of fact, if you look at it, the board was literally just applying the SIP net because it had to. As to these references, it not only provided the proper construction, but it essentially gave guidance that must be followed and controls the outcome. You've boxed yourself into a pretty narrow infringement argument, though, haven't you, with this claim construction? In other words, a system that only does what NetBIOS or WINS did wouldn't infringe, right? A system that does what NetBIOS and WINS do does not meet the limitation of is connected, Your Honor. That's correct. Okay. I don't think, other than that, in other words, I know that that's not what satisfies the claim. I don't think it speaks to whatever might satisfy the claim. Okay. But, Your Honor, I just want to be clear with this issue of the board. I think you fairly appreciate this already, but to this notion that the board somehow adopted their conclusions or contentions about how it operates, it's apparent from the record that's with respect to 469 Claim 1 is connected. A limitation is even present in that claim. I think those were claims where the discussion was about other grounds, and those claims were canceled. And so I think that's the conclusion to that. Thank you. Thank you. Thank you, Your Honor. I'd like to focus on two questions that were raised to Straight Path. The first question was, Straight Path was asked straight out, is 100% perfect accuracy required? And today, Straight Path had to argue, oh, this isn't about accuracy. That's not the limitation that is at issue. But what I'd like to do is read what Straight Path actually told the board and what Straight Path previously told the federal circuit. An oral argument in the SitNet appeal, the court specifically asked whether Straight Path's view, and I'm quoting, view is that the database must always be accurate, and that's the difference between the patented invention and the prior art, correct? And Straight Path responded, that's correct, Your Honor. That's at 806 F.3D. But in our prior opinion, we expressly stated that a query that asks only for registration information does not satisfy the limitations of the claim. And do you dispute that Biosyn wins, only asks for registration information? We absolutely do. And I just want to make this perfectly clear, Your Honor. When Straight Path was asked, this was Straight Path's position about what the embodiment is of the limitation that we are discussing. It is connected to the network limitation. And I'm quoting now. This is Appendix 1398. To determine whether a process is currently connected to the computer network at the time of the query, the specification describes that the connection server performs at least a two-step protocol to one, track when the process connected to the network, and two, track when the process disconnects from the computer network. That is exactly, exactly what the board found that the prior art does in this case. The court asked Straight Path, what are the embodiments? What are the embodiments? And Straight Path said, well, we don't have to answer that question. Straight Path has already answered it below. They have answered what specific technology is required to meet this limitation. And the board found that the prior art actually performs those limitations exactly as described by Straight Path. That's the important point here. Today, Straight Path tried to argue for the first time in these proceedings, well, perfect accuracy might not be required. Maybe the patent could make some errors. It only has to be designed to be accurate. This shifting accuracy standard is absolutely crucial, Your Honor. Straight Path is not permitted to avoid the prior art by arguing for perfect accuracy before the board and then in later proceedings attempt to disavow it. But that's not an issue here. That may be an issue in your later proceedings. That may be that you will conclude, as I asked, that they've locked themselves into a very narrow infringement analysis. But that doesn't change the question of what our prior claim construction was. That's absolutely correct, Your Honor. And I just want to answer a question that you asked of Straight Path. Well, if it's absolutely correct, why did you make the argument? Well, Your Honor, I just want to point out that the position has changed on appeal now. The position has changed. I'll tell you, counsel, I have real problems accepting your arguments because of what I consider misleading briefing in your blue brief. We certainly didn't intend to mislead you, and I believe you're referring to the adoption of petitioner's contention, Your Honor. Several times. We do believe it was adopted by the board. I do want to address one question that Judge O'Malley asked. Judge O'Malley asked, what are the embodiments? Don't the embodiments require checking the registration database? And I'd like to point you to this. This is Appendix 557. This is the 704 patent, Column 5. At Line 55, that's where the embodiment is disclosed, and it says what happens when a query is sent. At that point, the connection server, this is Line 57, searches the database to determine whether the colleague is logged in by finding any stored information corresponding to the colleague's e-mail address. So in other words, even the preferred embodiment of the patent itself checks the registration database. Well, I mean, our prior opinion recognized that fact, but said that that doesn't override what the plain language of the claims says. That's correct, Your Honor. What I'm pointing out is that the prior art is an embodiment of the claims. I see that my time is expired. Thank you. Thank you, Your Honor. Thank you. Thank you. Come inside, take your seats. Thank you.